23-1233 Williams v. OPM. Council? Please proceed, Council. Maybe I should have prepared sooner. I apologize, Your Honor. No worries. Good morning, Your Honors. My name is John J. Torekarashvili. I represent Ms. Melissa Williams. She's the appellant in this case. She's the surviving spouse of Haywood Nichols. This appeal arises from a decision by the Office of Personnel Management, OPM, and the Merit Systems Protection Board, MSPB, where it upheld the decision that Ms. Williams was not entitled to the distribution of annuities pursuant to a divorce settlement agreement. At issue is whether a valid state court order entered on July 1, 2010, which confirmed Ms. Williams' right to survival annuity benefits pursuant to 2006 marital settlement agreement is enforceable under federal law, where both parties and the court relied upon its finality, and where OPM initially acknowledged and acted upon the order awarding survival annuity. Is it your view that the error below was that they basically required magic words directly in contravention to case law that says there shouldn't have to be magic words? Well, exactly, Your Honor. FOX versus OPM specifically addresses that there is no need for magic words, as long as there is some reference to some kind of identification of some kind of annuity. In this case, the settlement agreement specifically stated where the husband, who is deceased now, the husband specifically said, spouse of benefits in my pension plan. That identifies survival benefits in the name of the wife. That's correct. And he also promised that he will not change that provision. Apparently, for unknown reasons, he changed his mind and he filed. He took that provision back. Based on that, OPM acted and denied the annuities. Now, Ms. Williams. Getting back to Mr. Nichols, the deceased husband, he was a former federal employee in the CSRS retirement system. Is that right? I believe so. Is there anything in the record that suggests he had more than one pension plan? I am not aware of any other pension plans, and OPM has not presented any other pension plans either. So we are talking about this one particular pension plan. How long was he a federal employee? All his life. I am not completely sure how long. So then it's very likely there really was only one retirement system he was part of. That's correct. I believe he had life insurance. He had four policies of life insurance. He has four children for each of those children. This particular annuity was for Ms. Williams. And so is it your view that there should have been an application of the three-part test articulated in our Downing opinion and that the board failed to do that? Downing is an interesting case because it talks about express terms, express provisions, whereas in that particular case there were no express provisions. That's why Downing held it the way they did. Didn't it lay out a three-part test for you have to look at whether there is a pertinent clause regarding a survivor annuity? And you're saying there is here. And second, if you look at that, you have to inquire whether the operative terms in that clause can fairly be read as awarding the annuity. And third, the court has to examine the evidence introduced concerning the intent and the circumstances. Yes, Your Honor. And is your argument that the government failed to do that in this case? I certainly don't see any evidence they did that. Well, they keep arguing, the government keeps saying that the order that was entered in July 1st of 2010, which was the case was reopened, and the judge specifically ruled on this annuity. They are arguing that this was a modification. We would say that that was not a modification. That was basically a clarification of what was the intent. In Downing, the appellant lost because whatever divorce decree or settlement agreement there was there, it didn't even mention anything about survivor benefits. It didn't say the word survivor benefits. Here, however, we have a settlement agreement that talks about survivor benefits in favor of the wife from his pension plan. Yes, Your Honor. And so then the next question would be, okay, what are the surrounding facts and circumstances of the settlement agreement that would indicate whether it's clear that we're talking about a particular survivor benefits plan? And that analysis didn't happen below. We have nothing to present, Your Honor. The only thing we have is the order, which was July 1st, 2010, and there is no objection from the deceased, the former husband. My client, Ms. Williams, once she got that order of July 1st, 2010, she promptly notified OPM, and she received a letter. Yes, but just to be clear, I think Jen's question was the same as mine. Is your allegation that the board failed to make this assessment properly under the correct legal test? I think so, Your Honor. Okay, great. Okay, do you have anything further? No, Your Honor. Then let's hear from the government. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. May it please the Court. The Court should affirm the decision of the Merit System Protection Board. This is a case where Ms. Williams' 2006 divorce decree, the first decree dividing the marital property, fails to expressly state the statutory requirement identifying a specific pension plan or the amount of that pension plan. Can I ask you a question? Thank you. You represent OPM, right? Yes, Your Honor. Does OPM have a general counsel? Yes, Your Honor. And does the general counsel determine whether OPM follows at all? Yes, Your Honor. Is OPM's general counsel aware of Fox, Downing, Hayward, other cases? I believe so, Your Honor. Okay. How would you characterize the OPM's initial rejection of the request here by Ms. Williams? Would you characterize that as saying the magic words were given? Your Honor, I believe that— Can you answer that question? How would you characterize the OPM's initial rejection? The initial rejection—no, I would not characterize that— What does it say? Doesn't it say you didn't specifically identify? It cites the regulations that tells you how to do that by naming the particular benefit program you're seeking benefits under? Your Honor, I don't interpret that to mean any specific language. It's just when you look at the court order, you must be able to determine— direct us to what page in the order you think helps you on this point. I believe—before I get the page number, Your Honor, let me double-check that I'm correct here. Your Honor, I believe the first correspondence in which OPM rejected the court order was January 27, 2009, at supplemental appendix 43. And in that third paragraph, it indicates this court order does not use terms that are sufficient to identify this retirement system, as explained by the implementing regulation. And what does 9-11 specify? Doesn't it tell you to use CSRS and other things like that?  So, looking at 9-11, Your Honor, is this, for example, CSRS for OPM? I don't want to beat you up too much on this, but the short of the matter is that it's pretty clear to me that OPM's general counsel hasn't instructed its various people to follow FOX. Pretty clear to me, but just to move on, let me ask you this question. When Judge Jackson had this case in front of her, did she follow the analytic framework laid out in FOX-9? Yes or no? She did not articulate the specific three-part test. However, from her decision, at least one of the three prongs fails, because she's unable to identify what the pension plan was at issue. Wasn't given the opportunity. Williams clearly got over step one in FOX. And step two is whether or not it's clear that there was an intention by the party to convey an interest in that particular thing, and she got over step two. Step three was the type of thing that Judge Chen was talking about, whether there was some other plan. And that's step three. We all know that. Correct? Yes, Your Honor. That's when that analysis happens. No, Your Honor. So did Judge Jackson afford Ms. Williams the opportunity to do that? Yes or no? Just answer. Yes, Your Honor. She did not. The record does not contain. Did you listen to the oral argument? Yes or no? No, Your Honor. So you didn't prepare for this argument? How can you answer me any questions about what Judge Williams did or didn't do if you didn't listen to the oral argument, which is on tape? Yes, Your Honor. I understand. Next time you'll be better prepared? Yes, Your Honor. Do we know if Mr. Nichols was in any other retirement system other than the CSRS? Your Honor, from the record, there's no indication whether he had other retirements. I'm just wondering why isn't this case very much like the facts of Fox, where, as I recall, we reversed the board below. There was a reference in a settlement agreement about the Survivor Benefits Plan without specifically identifying the particular Survivor Benefits Plan. And we concluded that, based on the record, it was quite clear what that Survivor Benefits Plan was. And so, therefore, that was good enough to award the appellant Survivor Benefits. And so now I'm looking at this case, and there's nothing in the record that suggests Mr. Nichols was ever part of another retirement plan other than the CSRS, and we have a settlement agreement that talks expressly about a Survivor Benefits Plan in favor of the wife from Mr. Nichols' pension plan. Why isn't that on all fours? Your Honor, the court was able to determine in the Fox case that their look at the record and affirmatively determined that there was no other pension plans. In this case, we have no idea how many pension plans he has. Opposing counsel said that he was a federal employee for his entire life. The record doesn't state how long he was a federal employee, but he lived for decades after he retired. So it's very possible and even plausible that he has other pension plans before or after. I think it's fair to say that the board didn't explore any of this. The board went straight to this regulation and seemed to have a certain understanding of this regulation that demands specific identification of a particular benefits plan, i.e. CSRS, FERS, etc. And because this marriage settlement agreement doesn't say one of those acronyms, then she rejected the appellant's Survivor Benefits annuity request. Isn't that right? I believe that you can read more into the court's decision than that. She looked at this record, the two sentences we have in the marital settlement agreement, and the statute and the implementing regulation require that you be able to look at the four corners of that marital settlement agreement and be able to determine if there was a survivor benefit. You can look outside the settlement agreement too, right? Isn't that what happened in Fox and maybe Hayward too? Well, I believe Rosado v. OPM, Your Honor, says that the OPM does not look behind the court order. But in the specific fact pattern that we have here, where we're trying to figure out survivor benefits for a former spouse, it seems like Fox and Hayward, they are open and mandate now that we look at the surrounding facts and circumstances. Well, I think, Your Honor, Hayward was a very different situation. Hayward had two court orders in front of the court, one that was specifically addressing military retirement benefits and one that was specifically addressing... Let's assume for the moment that the court concludes the board did an incomplete analysis here because it didn't actually undertake the three-step framework that I think Chief Drickmore referenced earlier. Do you think this regulation, 838.911, demands that a settlement agreement specifically identify the particular benefits plan? Yes, Your Honor. Okay, do you think that regulation then is invalid in light of Fox? No, Your Honor, I believe they can be read in harmony. How would that happen? Assume for the moment I have no idea and I find that this regulation, assuming it demands these kinds of magic words, is incompatible with the Fox holding that no magic words are necessary in settlement agreements. Well, then potentially the Fox decision is inconsistent with the statutory regulation requiring the Congress's intended that specific expressed terms, not specific, I shouldn't say there's no magic language, but expressed terms be used in order for OPM to effectuate their ministerial role in processing a divorce decree. Their role is not to infer or supplement or clarify. Their role is simply to look at the four corners of that divorce decree and determine whether there was a survivor annuity benefit granted. So are you saying that Fox was, what, just an infirm opinion, incorrectly decided? We did a statutory interpretation there of Section 83418 where we said what we said when we said that it was expressly provided for in that particular settlement agreement. And I suppose, Your Honor, what we're at odds with, if I'm correct, is that you're asking whether you can go beyond the four corners of this agreement to determine what the intent of the parties is. And I believe the court's opinion in Rosado says that the OPM is not going to go look behind the divorce decree to determine what the intent of the parties were. Wait, do you think that means that all of our cases that lay out this three-part system, which are numerous, are wrong, illegal, inaccurate? No, Your Honor. In conflict with something? But I think the facts in those cases allow the court to look at the settlement agreement in totality, and they're able to determine what the specific retirement plan is and what... But we actually have many cases now following this line that articulates this three-part test, which includes looking to the intent of the parties, which is clearly that's looking at evidence outside the four corners of the settlement document itself. Are you now saying that those are all wrongly decided? No, Your Honor. And there's no evidence in this case that there was any other intent of the parties. Could I ask you one more question? The thing that puzzled me a little bit was that OPM did not, in this case, what has happened is the case was entirely decided on paper from OPM's point of view. It submitted the regulations that were referred to. The attorney, Ms. Tiffany Slade, on behalf of the agency did that. But when it came to the oral argument, OPM did not appear. Can you explain why OPM didn't bother to appear at the oral argument in front of Judge Jackson? No, Your Honor, I don't have that information. A minute ago, I think you attributed too much to Congress. I'm not sure. Can you tell me what you think it is that Congress requires by level of specificity? Because I think you quite overstated what I understand the statute to require. I think you kind of stated what the regs require, but not what the statute does. And you attributed that to Congress. To the extent that I overstated, Your Honor, my apologies, 5 U.S.C. Section 8341H does say that it needs to be expressly provided for and then the implement. What needs to be expressly provided for? Because that's the mistake. I think a minute ago, you said Congress expressly required for the identification of the retirement system. I don't actually think H speaks at all about the particularities of the retirement system, i.e. CSRS versus FERS or anything else. It just says expressly provided for. And what is it that's expressly provided for? An annuity, correct? An annuity has to be expressly provided for. But it doesn't say, Congress didn't say anything about requiring identification of the particular agency or retirement system, correct? That's correct, Your Honor. Okay, and my last question, I'd like you, do you have 838.911 with you by any chance? Yes, Your Honor. Good. Can you pull it out and look at it for me? Yes, Your Honor. Okay, so help me understand this regulation. A is what we've all been focused on, because A is this regulatory requirement that adds a level of specificity to what's required in order to identify the particular retirement plan. Is that correct? Yes, Your Honor. And what is B? Is it just something totally different? I believe so, Your Honor. And C? So these are different things, right? These are, I guess, C, a court order affecting military retirement pay, is that different? Like you don't have to meet A if you meet C? All right, I'm not going to make you spend any more time on C, but let's turn to D, because I actually am not sure why this wasn't analyzed by OPM, but it seems to read right on this case, and I know it hasn't been analyzed, but since you're likely going to get best-case scenario for you of vacate and remand, maybe this is something they can look at below next time. A court order that requires an employee or retiree to maintain survivor benefits covering the former spouse satisfies the requirements of 838.804B1. So I think, and I could be wrong, but I think that you meet the level of specificity without necessarily having to say CSRS or FERS, right? Because this says a court order that requires the retiree to maintain survivor benefits. What am I missing? Well, Your Honor, OPM, it only has, so that's right. There's two scenarios. It's if it's expressly provided for in the divorce decree, or, I'm out of time, if I may continue, Your Honor, or if the court orders the former spouse to maintain the benefits. Wait, but didn't the court order here require him to maintain the benefits? But it's unclear, Your Honor, what plan they're referring to. There's nothing in the two sentences in the divorce decree that would notify OPM when they're reviewing this in their ministerial role. Okay, but just to be clear, A says if you identify CSRS, FERS, or OPM, or the like, you satisfy 838.804B1. D says you satisfy 838.804B1 alternatively if the court order requires you to maintain survivor benefits and if you're covered by CSRS or FERS. But it doesn't require the magic language of CSRS or FERS in that court order. I guess I don't see why this doesn't read on all fours. But you know what? We're not a case of first impression, so maybe if this goes back, somebody can take a look at that. Just a couple more questions. Yes, Your Honor. Go ahead. A month after the marriage settlement agreement was entered into, Mr. Nichols filed a form seeking to terminate Ms. Williams' survivor benefits, which seems to be contrary to what he agreed to in the marriage settlement agreement. To what effect, defendant, do you know that that has on Ms. Williams' ability to get survivor benefits? If it's appropriately ordered within the court order, it doesn't have an effect on a divorce decree that contains or provides for a survivor annuity. Just so I understand you, are you saying that what Mr. Nichols attempted to do was invalid in the face of the marriage settlement agreement? It would have no effect for OPM to enforce a valid court order ordering a survivor annuity benefit. Second question, it's a hypothetical. Let's assume for the moment that under our case law, Fox, Downing, Hayward, OPM is required to look at any evidence that shows the parties' intent behind the marriage settlement agreement in determining whether or not the surviving former spouse is entitled to survivor benefits. Would that mean that if that's the correct understanding of our case law, does that mean that 838.911 is invalid? Because 838.911 demands that you have to have magic words in the marriage settlement agreement or divorce decree. Potentially, I think that certainly creates a tension because 9-1-1 anticipates that by looking simply at the divorce decree, you're able to determine what was awarded to the surviving spouse. Okay, thanks. Thank you. Counsel, you have some rebuttal time. It looks pretty good for you. Do you think you need rebuttal time? I think that's an excellent choice. This case is taken under submission.